IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **GREAT WEST CASUALTY COMPANY,** <br> **1100 West 29th Street** <br> **South Sioux City, Nebraska 68766** | ) <br> ) <br> ) <br> ) | CIVIL ACTION <br><br> NO. _____ |
| **Plaintiff,** | ) <br> ) | |
| v. | ) <br> ) | |
| **DANA TRANSPORT, INC.** <br> **210 Essex Avenue East** <br> **Avenel, NJ 07001** | ) <br> ) <br> ) <br> ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

And now comes the Plaintiff, Great West Casualty Company ("Great West"), by and through its counsel, Post & Schell, P.C., and files this Complaint against Dana Transport, Inc. ("Dana Transport"), and in support thereof avers and relies upon the following:

**I.   THE CASE IN BRIEF**

1. This is a case of actual controversy involving the issue of whether a commercial lines policy of insurance issued by Great West provides coverage to Dana Transport in response to the third-party claims pending against Dana Transport in the underlying lawsuit.

2. The underlying lawsuit, captioned *David and Darlene Ayars v. PBF Energy, Inc. et al. v. Dana Transport, Inc.*, is pending in the New Jersey Superior Court, Gloucester County Civil Law Division, at Docket Number GLO-L-1112-19.

3. Paulsboro Refining Company, LLC and its related entities (collectively, "PBF"), filed a third-party complaint ("the Third-Party Complaint") against Dana Transport in the underlying lawsuit alleging that Dana Transport is liable over to PBF for PBF's alleged liability in response to the personal injury and product liability claims brought against PBF by plaintiff David Ayars ("Ayars") and his wife Darlene (collectively, "the Original Plaintiffs").

4. PBF's allegations against Dana Transport are premised on Dana Transport's purported contractual liability imputed to it under a Carrier Access Agreement (the "CAA") entered between PBF and Ayars' suspected employer, Mid-Atlantic Transport Corporation ("Mid-Atlantic"). PBF and Mid-Atlantic entered the CAA prior to the sale of Mid-Atlantic to Dana Transport.

5. However, because the sale of Mid-Atlantic to Dana Transport was an assets purchase only under which Dana Transport did *not* assume Mid-Atlantic's liabilities, the damages PBF seeks from Dana Transport by way of the Third-Party Complaint are not covered under the Great West policy.

6. Alternatively, if Dana Transport did assume Mid-Atlantic's liabilities with its assets purchase of Mid-Atlantic, the contractual liability exclusion of the Great West policy serves as a complete bar to coverage.

## II. THE PARTIES

7. Great West is a Nebraska Corporation with its principal place of business located at 1100 West 29th Street, South Sioux City, Nebraska 68766.

8. Dana Transport is a New Jersey Corporation with its principal place of business located at 210 East Essex Avenue, Avenel, New Jersey 07001.

III. **JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201.

10. Venue is proper under 28 U.S.C. § 1391 because the occurrence giving rise to the instant insurance coverage dispute took place in the District of New Jersey; and because Dana Transport resides within New Jersey within the meaning of 28 U.S.C. § 1391(c)(2).

IV. **FACTUAL BACKGROUND**

A. **PBF's Claims Against Dana Transport in the Underlying Lawsuit.**

11. The underlying lawsuit was initiated by the Original Plaintiffs against PBF for injuries Ayars allegedly sustained while loading a truck at the Paulsboro Refinery in Paulsboro New Jersey. A true and correct copy of the Complaint filed by the Original Plaintiffs against PBF is attached hereto as Exhibit "A" (the "Original Complaint").

12. The Original Complaint alleges that on September 13, 2017, "while working in the course and scope of employment as an independent contractor," (presumably for Mid-Atlantic), Ayars was loading a truck with propylene and propane chemicals. A loading hose unexpectedly disconnected from "the product," and caused an explosion which threw him to the ground. *See* Ex. "A" at ¶22.

13. The Third-Party Complaint was filed by PBF with its Answer to the Original Complaint. A true and correct copy of the Third-Party Complaint is attached hereto as Exhibit "B".

14. The Third-Party Complaint alleges that Mid-Atlantic entered into the CAA with PBF on or about September 17, 2015. *See* Ex. "B" at ¶3.

15. The Third-Party Complaint alleges that pursuant to Sections 6(a) and (b) of the CAA, Mid-Atlantic is obligated to defend, protect, indemnify and hold harmless PBF and its subsidiaries. *See id.* at ¶4.

16. The Third-Party Complaint alleges that pursuant to Section 4(b), the CAA obligates Mid-Atlantic to secure insurance for PBF with respect to liabilities arising out of the concurrent, contributory, or sole negligence of any Indemnified Party [including PBF], its subcontractors, invites, suppliers or third parties. *See id.* at ¶5.

17. The Third-Party Complaint alleges that "Carrier" under the CAA is defined to mean Mid-Atlantic [but not its related entities]. *See id.*

18. The Third-Party Complaint alleges that Dana Transport purchased Mid-Atlantic pursuant to a November 4, 2017 Agreement for Sale, including Mid-Atlantic's contract rights . . . and all other assets. . ." *See id.* at ¶7.

19. The Third-Party Complaint alleges that, based upon its purchase of Mid-Atlantic, Dana Transport must defend and indemnify PBF in the underlying lawsuit and obtain insurance on PBF's behalf. *See id.* at ¶¶8-9.

20. The Third-Party Complaint alleges that PBF sought a defense and indemnification from Dana Transport by tender letter dated September 24, 2019 and Dana Transport's failure to defend and indemnify PBF constitutes a breach of the CAA. *See id.* at ¶¶10-13.

21. PBF seeks complete indemnification from Dana Transport for all damages awarded to the Original Plaintiffs; judgment for contribution for all damages awarded to the Original Plaintiffs; and, judgment for complete indemnification by virtue of the failure to provide insurance coverage to PBF with respect to the Original Plaintiffs' claims along with attorneys' fees and costs. *See id.* at Wherefore Clause.

### B. The PBF-Mid-Atlantic Carrier Access Agreement

22. PBF and Mid-Atlantic entered the CAA effective for a one year term beginning on September 16, 2015, and year to year thereafter, subject to PBF's right to terminate and revoke the permission granted within the CAA.

23. The CAA provided Mid-Atlantic truck access to PBF facilities for the purpose of loading and unloading products, petrochemicals, equipment, and materials.

24. As alleged by PBF by way of the Third-Party Complaint, the CAA is governed by and construed in accordance with the laws of the State of Delaware.

25. The CAA defines Mid-Atlantic as "Carrier" and PBF as "Company."

26. The CAA purports to place requirements upon Mid-Atlantic as "Carrier" to procure insurance naming PBF as an additional insured.

27. Paragraph 6.1(b)(1) of the CAA contains an indemnity provision which purports to obligate Mid-Atlantic to defend and indemnify PBF in a variety of circumstances, including with respect to damages for personal injury arising out of or in any way connected to *Mid-Atlantic's* performance of the CAA.

28. The CAA's Indemnity Provision at Paragraph 6.1(a)(1) defines "Indemnified Party" or "Indemnified Parties" as: "COMPANY [PBF], ITS PARTNERS, AFFILIATES, PARENTS AND SUBSIDIARY AND RELATED ENTITIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, PARTNERS AND AGENTS."

29. While the CAA's definition of "Indemnified Party" includes PBF, and its related entities, there is no reference therein to Mid-Atlantic's related entities.

### C. The Letter of Mutual Intentions

30. In 2016, Dana Transport and Mid-Atlantic entered negotiations for the sale of Mid-Atlantic.

31. Dana Transport and Mid-Atlantic reduced their mutual intentions with respect to the sale to letter dated July 14, 2016 ("The Letter of Mutual Intentions").

32. The Letter of Mutual Intentions is governed by and construed in accordance with the laws of the State of New Jersey.

33. The Letter of Mutual Intentions identifies Dana Transport as "Buyer" and Mid-Atlantic as "Seller".

34. In pertinent part, Paragraph 1(a) of the Letter of Mutual Intentions provides: "There will be no assumption of liabilities other than those specifically agreed to between Buyer and Seller."

**D.    The Agreement for Sale & Bill of Sale**

35. Dana Transport and Mid-Atlantic are parties to an Agreement for Sale dated November 4, 2016. The Agreement for Sale did not become effective until the Bill of Sale was executed on December 29, 2017.

36. Section 9.12 of the Agreement for Sale provides that the Agreement for Sale is governed by and construed in accordance with the laws of the State of New Jersey.

37. Section 9.01 of the Agreement for Sale provides that the Agreement for Sale is to inure to the benefit of the Dana Transport and Mid-Atlantic and their successors and assigns.

38. The Bill of Sale transfers to Dana Transport Mid-Atlantic's rights, title and interest in the "Purchased Assets"—*but not its liabilities*.

**E.    Great West's Defense of Dana Transport in the Underlying Lawsuit**

39. Subsequent to the filing of the Third-Party Complaint, Great West agreed to defend Dana Transport in response to PBF's third-party allegations subject to a full and complete reservation of Great West's rights and defenses under the Great West policy and applicable law.

40. Accordingly, Great West retained counsel to defend Dana Transport in the underlying lawsuit.

41. Great West became a real party in interest when it initiated its defense of Dana Transport in the underlying lawsuit.

## V. **THE POLICY**

42. Great West issued Commercial Lines Policy Number GWP36200M ("the Policy") to Dana Transport for the policy period of August 1, 2017 to August 1, 2018. A true and correct certified copy of the Policy is attached hereto as Exhibit 'C'.

43. The Policy is to be construed in accordance with the laws of the State of Indiana.

44. The Policy provides commercial auto and commercial inland marine/cargo coverage, but not commercial general liability coverage.

45. At **SECTION II**, the Policy includes form CA 16 13 12 13, entitled **COVERED AUTOS LIABILITY COVERAGE**, which provides, in relevant part, as follows:

> A.   COVERAGE
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> \* \* \*
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgment or settlements.

*See* Ex. "C" at GWCC Policy 409.

46. Part B of **SECTION II** contains various exclusions including the contractual liability exclusion which provides:

> **B. EXCLUSIONS**
>
> This insurance does not apply to any of the following:
>
> **2. CONTRACTUAL**
>
> Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:
>
> a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
>
> b. That the insured would have in the absence of the contract or agreement.

*See id.* at GWCC Policy 411.

47. The term "insured contract" is defined by Sections VI(L)(5) and (6) of the Policy as follows:

> 5. That part of any other contact or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or
>
> 6. That part of any other contract or agreement entered into, as part of your business, pertaining to the loan, lease or rental, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent it obligates you or any of your "employees", to pay for "property damage" to any "auto" loaned, leased or rented by you or any of you "employees".

*See id.* at GWCC Policy 422.

8

48. The Commercial Auto Extension Endorsement—Coverage for Certain Contracts—Form No. CA 49 80 04 11, modifies the Commercial Auto Coverage Part of the Policy to define "Insured Contract" as follows:

> 1. That part of any contract or agreement that pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased ore rented with a driver;
>
> 2. That part of any contract or agreement that holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.
>
> You agree to report 100% of your gross revenue or mileage, whichever is applicable, while operating under contract or lease to another and pay the specified rate. This clause of the policy premium applies only if the policy premium is to be paid on a Reporting Basis.

*See id.* at GWCC Policy 025.

## COUNT I – DECLARATORY JUDGMENT

49. The allegations at Paragraphs 1 through 48 above are hereby incorporated by reference as if fully set forth herein.

50. A case of actual controversy exists between the parties regarding whether there are damages alleged against Dana Transport by way of the Third-Party Complaint which are covered under the Policy.

51. The Policy provides coverage for "damages because of 'bodily injury'" . . . to which the Policy applies.

52. Dana Transport is currently being defended in the underlying lawsuit by Great West. However, the third-party claims asserted against Dana Transport do not seek "damages because of 'bodily injury'. . . to which the Policy applies."

53. PBF's third-party claims do not constitute covered claims because Dana Transport did not assume Mid-Atlantic's contractual liabilities under the CAA when it purchased the assets of Mid-Atlantic pursuant to the Agreement for Sale.

54. Under New Jersey law, which governs the Agreement for Sale and Bill of Sale, where one company sells or otherwise transfers all of its assets to another company, the latter is *not* liable for the debts and liabilities of the former.

55. Alternatively, if the Agreement for Sale and Bill of Sale did require Dana Transport to assume Mid-Atlantic's liabilities, including any liability it assumed under the CAA such as indemnity or insurance procurement obligations, the contractual liability exclusion would apply to preclude coverage for the claims pending against Dana Transport.

56. The contractual liability exclusion would apply if the Agreement for Sale and Bill of Sale did require Dana Transport to assume Mid-Atlantic's liabilities because the Agreement for Sale was dated November 4, 2017, and/or because the Bill of Sale, which finalized the sale, was not executed until December 29, 2017.

57. Thus, Ayars' alleged "bodily injury," which occurred on September 13, 2017, did not take place "subsequent to the execution of the contract or agreement" as required for the "insured contract" exception to the contractual liability exclusion to apply.

58. In other words, because the sale of Mid-Atlantic to Dana Transport was not finalized until after the subject September 13, 2017 loss, there was no contractual liability assumed by Dana Transport pursuant to the Agreement for Sale, Bill of Sale, or CAA as of the date of loss.

59. Moreover, the contractual liability exclusion would apply if the Agreement for Sale and/or Bill of Sale did require Dana Transport to assume Mid-Atlantic's liabilities because the CAA is not an "insured contract" as defined by the Policy. Specifically, the CAA is not an insured contract because it does not pertain to *Dana Transport's* business, *Dana Transport's* lease of a trailer, or the lease of a trailer by a *Dana Transport* employee.

60. Additionally, if it is determined in the underlying lawsuit that Ayars was an independent contractor, as opposed to a Mid-Atlantic employee, at the time of the occurrence, PBF's third-party claims do not constitute covered claims because there was no assumption by Dana Transport pursuant to the Agreement for Sale and/or Bill of Sale to assume the liabilities of independent contractors.

61. Pursuant to 28 U.S.C. § 2201, Great West requests that this Court issue a declaratory judgment ruling that, in entering the Agreement for Sale and/or Bill of Sale, Dana Transport did not assume the obligation to defend and/or indemnify PBF, or obtain insurance naming PBF as an insured, with respect to the allegations asserted by the Original Plaintiffs in the underlying lawsuit.

62. Alternatively, to the extent it is determined that Dana Transport did assume the liabilities of Mid-Atlantic, Great West requests that this Court issue a declaratory judgment ruling pursuant to 28 U.S.C. § 2201 providing that the contractual liability exclusion serves as a complete bar to coverage for the claims asserted against Dana Transport in the underlying lawsuit.

63. For the foregoing reasons, Great West has no duty to defend or indemnify Dana Transport with respect to the allegations asserted against it by PBF in the underlying lawsuit.

**WHEREFORE**, Great West demands judgment in its favor, together with costs and interest and the following relief:

(a) Declare that Dana Transport did not assume the contractual liabilities of Mid-Atlantic under the CAA when it purchased the assets of Mid-Atlantic pursuant to the Agreement for Sale and Bill of Sale;

(b) Declare, alternatively, that if Dana Transport is found to have assumed the contractual liabilities of Mid-Atlantic, the contractual liability exclusion applies to preclude any coverage obligation on the part of Great West owed to Dana Transport under the Policy;

(c) Declare that coverage under the Policy is governed by Indiana law;

(d) Declare that the Third-Party Complaint does not seek damages to which the Policy applies;

(e) Declare that Great West has no duty to defend Dana Transport in the underlying lawsuit pursuant to the Policy and, accordingly, may withdraw its defense of Dana Transport in the underlying lawsuit;

(f) Declare that Great West has no duty to indemnify Dana Transport against any liability or judgment in the underlying lawsuit pursuant to the Policy; and

(g) Such other and further relief as the Court deems appropriate.

POST & SCHELL, P.C.

Dated: February 4, 2020

By _____
MARNI S. BERGER, ESQ.
Four Penn Center, 13th Floor
1600 John F Kennedy Blvd.
Philadelphia, PA 19103
Phone: 215-587-1035
Facsimile: 215-320-4874
*Attorneys for Plaintiff*
*Great West Casualty Company*